1
2
3
4
5
6                         UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
7                                    AT SEATTLE

8   RIVERFRONT LANDING PHASE II
    OWNERS' ASSOCIATION,
9
                    Plaintiff,                    Case No. C08-0656RSL
10
            v.                                    ORDER REGARDING
11                                                DEFENDANT'S MOTIONS FOR
    ASSURANCE COMPANY OF                          PARTIAL SUMMARY JUDGMENT
12  AMERICA,

13                  Defendant/Third-Party
                    Plaintiff,
14
            v.
15
    WESTERN HERITAGE INSURANCE
16  COMPANY,

17                  Third-Party Defendant.

18

19
                               **I. INTRODUCTION**
20
        This matter comes before the Court on two motions for partial summary judgment
21
    filed by defendant Assurance Company of America ("Assurance" or "defendant").
22
    Plaintiff, a homeowners' association, is the assignee of defendant's insured, C. Gil
23
    Peckham d/b/a GT Framing ("GT Framing"). In one of its motions, defendant seeks
24
    dismissal of plaintiff's "extra-contractual" claims for bad faith, violation of Washington's
25
    ORDER REGARDING MOTIONS FOR
26  PARTIAL SUMMARY JUDGMENT - 1

Consumer Protection Act ("CPA"), negligence, and violation of Washington's Insurance Fair Conduct Act ("IFCA"), RCW 48.30.015(4). In the second motion, defendant seeks summary judgment establishing that its policy does not cover certain costs related to GT Framing's work.

For the reasons set forth below, the Court grants defendant's motion regarding the extra-contractual claims and grants in part and denies in part the motion regarding coverage.[1]

## II. DISCUSSION

### A. Background Facts.

Defendant issued a liability insurance policy to GT Framing, a subcontractor that performed work on Phase II of the Riverfront Landing Condominiums (the "condominiums"), located in Bothell, Washington. Coverage began on September 20, 2000 and ended on September 20, 2001. In April 2000, GT Framing contracted with general contractor MJM Construction to perform framing, window installation and other work on the condominiums. The Association was created in March 2001 when the condominiums were completed. The Association settled its claims against MJM and the project developer and thereby obtained their rights to claims against the subcontractors for work on the condominiums.

On March 13, 2003, GT Framing filed a voluntary petition for bankruptcy protection under Chapter 7 of the Bankruptcy Code. GT Framing was discharged in bankruptcy on June 18, 2003.

In June 2006, the Association demanded arbitration with GT Framing and other

---

[1] Because the Court finds that this matter can be decided on the parties' memoranda, declarations, and exhibits, defendant's request for oral argument is denied.

ORDER REGARDING MOTIONS FOR
PARTIAL SUMMARY JUDGMENT - 2

subcontractors. Defendant retained an attorney to represent GT Framing in the arbitration. After it was notified of GT Framing's discharge in bankruptcy, the Association represented that it was not seeking to recover from GT Framing itself, but was "seeking to establish GT Framing's liability solely for purposes of recovery against GT Framing's insurer." Declaration of Gary Sparling, (Dkt. #25) ("Sparling Decl."), Ex. I at p. 2; see also id. at p. 4. The arbitrator issued his final award in February 2008, awarding the Association $783,798 in damages against GT Framing. With costs and attorney's fees, the final amount awarded against GT Framing was $914,168.10. The arbitrator found extensive damage to the condominiums caused by GT Framing's faulty or defective construction including a failure to provide notching or venting in the deck joists and a failure to provide appropriate venting in the exterior walkways, the roofing and the parapet. Declaration of Robert Hyde, (Dkt. #34) ("Hyde Decl."), Ex. A.

The final arbitration award restricted any recovery by the Association to GT Framing's insurance: "The amount awarded in respect to GT Framing may not be reduced to judgment against GT Framing, but shall only be subject to collection against any policy of insurance and/or proceeds of any applicable policy of insurance." Sparling Decl., Ex. K. The Yakima County Superior Court entered an order confirming the arbitration award, but, consistent with the arbitrator's order, no judgment was entered. The Association filed this action on March 19, 2008. On July 7, 2008, GT Framing allegedly assigned its insurance rights to the Association.

The Association contends that defendant unreasonably refused to pay the amount awarded by the arbitrator, despite several demands that it do so. Defendant informed the Association through correspondence that "little, if any" of the damages were covered by the policy. Hyde Decl., Ex. G. In addition to the extra-contractual claims, plaintiff also

ORDER REGARDING MOTIONS FOR
PARTIAL SUMMARY JUDGMENT - 3

seeks to enforce the arbitration award and seeks a declaratory judgment under the insurance policy.

The policy obligates defendant to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Sparling Decl., Ex. B (hereinafter, the "policy") at § I.1(a). An "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at § V.13. "Property damage" means:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

Id. at § V.17. The policy also includes the following exclusion: "'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard." Id. at § I.2.l. "Products-completed operations hazard" is defined to include "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work'" with two exceptions that do not apply in this case. Id. at § V.16. "Your work" means:

> a. Work or operations performed by you or on your behalf, but does not include work or operations performed by another entity which joined with you to form a partnership or joint venture not shown as a Named Insured in the Declarations, which terminated or ended prior to the effective date of this policy; and
>
> b. Materials, parts, or equipment furnished in connection with such work or operations.

Id. at § V.24. The policy also excludes "Damage to Impaired Property or Property Not Physically Injured" that arises out of "[a] defect, deficiency, inadequacy or dangerous condition in "your product" or "your work." Id. at § I.2.m.

ORDER REGARDING MOTIONS FOR
PARTIAL SUMMARY JUDGMENT - 4

**B.      Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the records show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Id. at 1221.

**C.      Analysis of the Extra-Contractual Claims.**

After defendant filed its motion for partial summary judgment, the Court requested that the parties file supplemental briefing to address whether plaintiff has standing to pursue the extra-contractual claims and whether it is the real party in interest. The Association filed this action before GT Framing assigned its insurance rights to it. The parties subsequently filed their supplemental memoranda.

Although defendant's motion to dismiss addressed only the extra-contractual

claims, the Court must consider whether the Association has standing to assert any of its claims at the time it filed suit. "The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint." Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 838 (9th Cir. 2007) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 569 n.4 (1992)). The Court finds that the Association had standing to assert a claim to enforce the arbitration award and for a declaratory judgment. The final arbitration award contemplated that the award would be subject to collection against GT Framing's insurance. Hyde Decl., Ex. B. The order confirming the arbitration award stated "that the amount awarded against GT Framing shall be subject to collection against any policy of insurance and/or proceeds of any applicable policy of insurance." Id., Ex. D. Those orders permit the Association to seek to collect against defendant, and the Association has standing to do so.

However, the Association has not shown that at the time it filed suit, it had standing to assert claims for bad faith, negligence, and violations of the IFCA and CPA. A plaintiff must demonstrate standing separately for each claim alleged. See, e.g., Friends of the Earth v. Laidlaw Envtl. Services, 528 U.S. 167, 184 (2000). The bad faith and negligence claims are premised upon duties that defendant owed to its insured, not to a third party. See, e.g., Tank v. State Farm Fire & Cas. Co., 105 Wn.2d 381, 393-94 (1986) (explaining that the duty to act in good faith is owed to the insured; Washington law does not provide for a third-party bad faith claim). In fact, plaintiff's own interests were adverse to GT Framing's for much of the relevant time. Because defendant did not owe any duties to plaintiff at the time it filed suit, defendant could not have caused it to suffer any injury in fact to support the bad faith, negligence, or IFCA claims. As for

plaintiff's CPA claim, its only claimed damages in its own right, litigation expenses,[2] are typically insufficient to confer standing. See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 107 (1998).

The Association argues that it has standing because GT Framing assigned its rights, thereby curing any standing deficiency. The assignment may be sufficient to show that plaintiff is the real party in interest. However, plaintiff must separately establish standing. At the time the Association filed this action, it was neither the insured nor its assignee. Because standing is determined at the time the complaint is filed, a lack of standing cannot be retroactively cured by later occurring events. That principle also undermines the Association's argument that pursuant to Federal Rule of Civil Procedure 15, the Court should treat its amended complaints as supplemental pleadings. Rule 15 is designed to cure earlier pleadings that are "defective in stating a claim or defense." Fed. R. Civ. P. 15(d). The Association's claims were not defective; rather, the Association lacked standing to pursue them. The Association has not cited any authority to show that Rule 15 can be used to "cure" a lack of standing.

Although the Association argues that defendant did not object when it filed the extra-contractual claims, standing is a constitutional requirement that cannot be waived. The Association also argues that dismissal of those claims would waste resources and time because it will simply re-file the claims in a new lawsuit. That argument ignores the fact that any order this Court enters without subject matter jurisdiction is void. Neither

---

[2] Defendant's motion for summary judgment is based in large part on plaintiff's alleged lack of damages. However, while defendant focuses on the lack of damages as a missing element in plaintiff's claims, it also undermines plaintiff's standing. Standing is a threshold issue that must be resolved before the Court will evaluate the merits of the claims.

1  the Court nor the parties should have to waste resources obtaining and entering an order
2  that may be voided later. Accordingly, the Association's claims for bad faith, negligence,
3  and violations of the IFCA and the CPA are dismissed without prejudice for lack of
4  standing.

Defendant requests that the Court award terms based on plaintiff's premature assertion of the extra-contractual claims. Defendant did not set forth the basis for the request. The Court declines to award terms because the premature filing of the claims was not done in bad faith or to vexatiously multiply the proceedings. Instead, it seems to have been the result of an understandable mistake.

Finally, defendant has filed a "conditional motion" requesting a separate trial of plaintiff's extra-contractual claims. Because those claims have been dismissed, the motion is denied as moot.

**D.      Partial Summary Judgment Limiting Recoverable Costs.**

In its second motion for summary judgment, defendant seeks an order establishing that its policy does not cover several categories of damages: (1) costs for repairing GT Framing's defective work that allegedly caused no other damage, (2) costs for repairing or replacing damage to GT Framing's own work, and (3) the "get-to" costs for accessing and repairing GT Framing's damaged work. When issuing a general liability policy like the one at issue in this case, the insurer "is not issuing a performance bond, product liability insurance, or malpractice insurance." Aetna Cas. & Surety Co. v. M&S Indus., Inc., 64 Wn. App. 916, 921 (1992). As a result, the policy "insures against damage to tangible property of another, not the insured's property."[3] Id. It is undisputed that GT

---

[3] Coverage is limited to damage to another's property because the "risk of replacing and repairing defective materials or poor workmanship has generally been

ORDER REGARDING MOTIONS FOR
PARTIAL SUMMARY JUDGMENT - 8

Framing's work caused damage to roofs, unit decks, and walkways. Defendant contends that any recovery by the Association must be limited to the amounts in the arbitration award that relate to damages caused by GT Framing's work to the work of others, plus the reasonable costs of accessing that damage.

"The insured bears the burden of showing that coverage exists; the insurer that an exclusion applies." Mutual of Enumclaw Ins. Co. v. T&G Constr., Inc., 165 Wn.2d 255, 268 (2008). Under Washington law, the Court must liberally construe the policy in favor of finding coverage. See, e.g., Bordeaux, Inc. v. American Safety Ins. Co., 145 Wn. App. 687, 694 (2008). Coverage exclusions "are contrary to the fundamental protective purpose of insurance and will not be extended beyond their clear and unequivocal meaning; they are "strictly construed against the insurer." Stuart v. Am. States Ins. Co., 134 Wn.2d 814, 818-19 (1998).

Against that backdrop, the Court must determine whether GT Framing's work caused damage to the tangible property of anyone else, and if so, the scope of covered repairs necessitated by the damage. Plaintiff argues that defendant is bound by the arbitrator's ruling that GT Framing's work caused extensive damages. The Association argues that the insurer could have intervened in the arbitration, and because it failed to do so, it is bound by the decision. It is unclear whether or how the insurer could have intervened in the private arbitration. Regardless, contrary to plaintiff's assertion, defendant is not attempting to re-litigate the amount GT Framing owes to the Association

---

considered a commercial risk which is not passed on to the liability insurer." Anthem Electronics, Inc. v. Pac. Employers Ins. Co., 302 F.3d 1049 (9th Cir. 2002) (explaining that insureds can minimize their replacement and repair costs for damage to their own property). To that end, it is important to remember in this case that the insured was GT Framing, not the Association, and GT Framing generally is responsible for damage to its own work.

ORDER REGARDING MOTIONS FOR
PARTIAL SUMMARY JUDGMENT - 9

or the factual basis for that award. It is, however, entitled to an adjudication of the separate issue of the scope of policy coverage. The arbitrator did not construe the policy language or determine that all of the damages were covered losses. The issue of coverage is separate from the issue of GT Framing's liability. See, e.g., T&G Constr., Inc., 165 Wn.2d at 263 (explaining that the "presumptive damages" against an insured "are not necessarily the covered damages. . . . An insurer may property litigate these questions in a coverage case."). Accordingly, the Court will not assume that all of the damages are covered losses.

Similarly, plaintiff argues that defendant internally acknowledged that some of the damages were covered. Hyde Decl., Exs. E, F. An internal analysis, however, is not binding in this litigation. Although it is relevant to a bad faith claim, that claim is not currently before the Court. Finally, defendant concedes that some of the damages are covered. Therefore, the internal analysis, which is conclusory, is of limited relevance at this point.

In support of its argument that the damages are covered, plaintiff relies on a declaration from Martin Savage, a Project Manager at J2 Building Consultants, whom the Association has hired to provide construction management and oversight services during the repairs. Savage has overseen and coordinated the repair work at Riverfront Landing. Savage opines about the scope of the damage and relationship between the damage and GT Framing's work. Defendant argues that the declaration must be stricken because this case does not involve matters unrelated to the arbitration, including subsequent repairs. However, the arbitrator found extensive damage, which necessarily requires repairs. Therefore, opinions regarding the scope and cause of the damage are relevant. Furthermore, the Court requires some factual evidence to determine the scope of

coverage; because the arbitration involved a different legal issue, the evidence on the coverage issue was not fully developed in the arbitration. Defendant also argues that Savage's opinion is an expert opinion that was not timely disclosed. However, Savage is opining on what he personally observed. Defendant was aware of Savage's opinions prior to receiving his declaration; it deposed him on the same issues. Accordingly, the Court will consider Savage's declaration. Similarly, the Court has considered the deposition testimony of Mark Jobe, the Association's expert in the arbitration, regarding the subsequent repairs. Neither party has identified any reason why the Court should confine the admissible evidence in this case to the evidence that was before the arbitrator.

Having resolved the evidentiary and *res judicata* issues, the Court turns to the specific damage. The record shows that GT Framing's faulty work caused damage to the work of others. On the decks and roofs, GT Framing's work damaged the elastomeric membranes installed on those items and shortened their life spans. Jobe Dep. at pp. 140-142 (explaining that the membranes on the decks would have to be removed "much sooner"). Although defendant argues that a shortened life span of a building component is not property damage, it cites nothing in support. Defendant has not shown that it is entitled to summary judgment on its liability for the costs of removing and replacing those membranes, which were installed by a third party. Similarly, defendant could be liable for damages caused by standing water blown under siding if those parts were installed by another contractor. Plaintiff has also shown that GT Framing's work caused damage to some of the roof insulation, which was installed by a third party. Therefore, GT Framing's work caused some property damage.

Defendant seeks a finding that the Association is not entitled to recover the costs of repairing or replacing any of GT Framing's own work or the "get-to" costs associated

ORDER REGARDING MOTIONS FOR
PARTIAL SUMMARY JUDGMENT - 11

with that work. Despite the "own work" exclusion, defendant could be responsible for some of those costs as consequential damages. For example, to the extent that removal and repair of GT Framing's work was necessary to get to and repair the resultant damage to the work of another, those consequential damages are covered losses. See, e.g., T&G Constr., 165 Wn.2d at 270 (explaining that removing and repairing the siding installed by the insured was part of the cost of repairing the damage to the interior walls installed by a third party); id. at p. 272 (explaining that the insurer is responsible for the "cost of work reasonably necessary to repair covered property damage."); Declaration of Martin Savage, (Dkt. #88) at ¶¶ 3-7 (explaining that repairing the damaged insulation requires removal and replacement of some of GT Framing's work, as well as the work of two other subcontractors). Similarly, defendant is liable for any "damage to the work of other subcontractors, which had to be removed and destroyed as a result of" GT Framing's defective work. DeWitt Constr. Inc. v. Charter Oak Fire Ins. Co., 307 F.3d 1127, 1134 (9th Cir. 2002) (explaining that the insurer was liable for the costs of removing another subcontractor's pile-caps that had been installed on top of its client's defective piles). In contrast, defendant is not responsible for the costs of removing and repairing GT Framing's work to uncover and repair property damage that is not covered by the policy, including GT Framing's own faulty work. T&G Constr., 165 Wn.2d at 272; see, e.g., New Hampshire Ins. Co. v. Vieira, 930 F.2d 696, 701 (9th Cir. 1991) (explaining that "the nature of repairs cannot convert noncovered damage into covered damage. . . . [Nor can it] create coverage where none exists."). Therefore, defendant is not entitled to summary judgment holding that none of the costs of repairing or replacing GT Framing's work is covered.

Defendant contends that GT Framing's failure to vent the walkways did not cause

ORDER REGARDING MOTIONS FOR
PARTIAL SUMMARY JUDGMENT - 12

any covered "property damage," so coverage for the damaged walkways is not triggered. Plaintiff argues that GT Framing's work caused elevated moisture levels within the walkways, and that "property damage" can include a loss of use. Residents have temporarily lost use of the walkways while they are being repaired. However, plaintiff has not identified any damage to the work of third parties resulting from the elevated moisture levels. The "impaired property" exclusion excludes damages where the use was lost because of the insured's own defective work. Policy at § I.2.m. Plaintiff's allegations fall squarely within that exclusion. Accordingly, there is no coverage for damage to the walkways and defendant is entitled to summary judgment on that issue.

Finally, plaintiff moves to strike a "joinder" to defendant's motion filed by third party defendant Western Heritage Insurance Company because it was filed one day before plaintiff's response was due. The "joinder" was not filed as a motion even though it sought dispositive relief. Moreover, it included a declaration and documentary evidence to which plaintiff had insufficient time to respond. Accordingly, the Court did not consider the joinder.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's motion for partial summary judgment (Dkt. #24) and dismisses the extra-contractual claims without prejudice. The Court GRANTS IN PART AND DENIES IN PART defendant's motion for partial summary judgment regarding coverage (Dkt. #69) and dismisses plaintiff's claim for damages based on the walkways. The Court DENIES defendant's motion to

bifurcate (Dkt. #105) as moot.

DATED this 6th day of July, 2009.

/s/ Robert S. Lasnik
Robert S. Lasnik
United States District Judge

ORDER REGARDING MOTIONS FOR
PARTIAL SUMMARY JUDGMENT - 14